Filed 8/1/16

# IN THE SUPREME COURT OF CALIFORNIA

ROBERT C. BARAL, )
)
    Plaintiff and Respondent, )
)     S225090
    v. )
)     Ct.App. 2/1 B253620
DAVID SCHNITT, )
)     Los Angeles County
    Defendant and Appellant. )     Super. Ct. No. BC475350
_____ )

California's anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . shall be subject to a special motion to strike, unless the court determines . . . there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).)[1] This case raises a question that has perplexed the Courts of Appeal: How does the special motion to strike operate against a so-called "mixed cause of action" that combines allegations of activity protected by the statute with allegations of unprotected activity?

The difficulty arises from the statute's use of the term "cause of action," which has various meanings. It may refer to distinct claims for relief as pleaded in

---

[1] "SLAPP" is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.) Further statutory references are to the Code of Civil Procedure. Hereafter, we refer to section 425.16, subdivision (b)(1) as section 425.16(b)(1).

a complaint. These are usually set out as "first cause of action," "second cause of action," and so forth. But the term may also refer generally to a legal claim possessed by an injured person, without reference to any pleading. A person may have a cause of action for defamation or breach of contract even if no suit has been filed. In theory, the right of an injured party to seek legal relief may be analyzed in terms of the plaintiff's " 'primary right,' " the defendant's " 'primary duty,' " and a breach of that duty entitling the plaintiff to a remedy. (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 34, p. 98.)

Typically, a pleaded cause of action states a legal ground for recovery supported by specific allegations of conduct by the defendant on which the plaintiff relies to establish a right to relief. If the supporting allegations include conduct furthering the defendant's exercise of the constitutional rights of free speech or petition, the pleaded cause of action "aris[es] from" protected activity, at least in part, and is subject to the special motion to strike authorized by section 425.16(b)(1). Some courts, including the Court of Appeal in this case, have held that the motion lies *only* to strike an entire count as pleaded in the complaint. However, this rule leads to anomalous results when the count is supported by allegations of unprotected activity as well as protected activity.

Viewing the term in its statutory context, we conclude that the Legislature used "cause of action" in a particular way in section 425.16(b)(1), targeting only claims that are based on the conduct protected by the statute. Section 425.16 is not concerned with how a complaint is framed, or how the primary right theory might define a cause of action. While an anti-SLAPP motion may challenge any claim for relief founded on allegations of protected activity, it does not reach claims based on unprotected activity.

It follows that "mixed cause of action," the term frequently used to designate a count alleging both protected and unprotected activity, is not strictly

2

accurate. Section 425.16(b)(1) applies only to "causes of action" that arise from allegations of protected speech or petitioning. However, "mixed cause of action" is a term in common usage, and we sometimes employ it for its customary purpose. We also sometimes use "cause of action" in its ordinary sense, to mean a count as pleaded. To avoid confusion, we refer to the proper subject of a special motion to strike as a "claim," a term that also appears in section 425.16(b)(1).[2]

The Court of Appeal below held that an anti-SLAPP motion must be brought against a mixed cause of action in its entirety. It affirmed the denial of defendant's motion because plaintiff established a probability of succeeding on claims based on allegations of activity not protected by section 425.16. This application of the anti-SLAPP statute unduly limits the relief contemplated by the Legislature. Accordingly, we reverse.

## I. BACKGROUND

We summarize the Court of Appeal's account of the litigation below, which is essentially undisputed. Robert C. Baral and David Schnitt owned and managed a company, IQ BackOffice LLC (IQ).[3] Baral sued Schnitt for fraud and multiple breaches of fiduciary duty. The original complaint alleged 16 counts supported by allegations that Schnitt secretly negotiated to sell IQ on terms advantageous to him and detrimental to Baral. It also included causes of action for libel and slander, based on allegations that Schnitt unilaterally commissioned the accounting firm

---

[2] A plaintiff must establish a probability of prevailing on any "claim" that arises from protected activity. (§ 425.16(b)(1).)

As we have observed on other occasions, despite the imprecision that may result from the various connotations of the term "cause of action," its meaning is generally evident in context. (*Slater v. Blackwood* (1975) 15 Cal.3d 791, 795-796; *Eichler Homes of San Mateo, Inc. v. Superior Court* (1961) 55 Cal.2d 845, 847-848.)

[3] There were other co-owners, who are not parties to the lawsuit.

3

Moss Adams to investigate possible misappropriation of IQ assets. Baral contended that Schnitt controlled the scope of the audit, knowingly gave Moss Adams false information to discredit Baral, and told the firm not to interview him. He claimed that because of Schnitt's falsehoods, Moss Adams incorrectly concluded Baral had engaged in unauthorized transactions. The complaint alleged that Schnitt refused to correct the false information in the report, which was ultimately published to the potential purchaser and the other members of IQ.

Schnitt filed an anti-SLAPP motion. The court struck the defamation counts. It concluded that, because those claims were based on communications in a prelitigation fraud investigation, they were protected by the litigation privilege. Baral filed a notice of appeal and a first amended complaint. Schnitt responded with another motion to strike. At this point, Baral retained new counsel and abandoned his appeal. By stipulation, the pending anti-SLAPP motion was withdrawn and a second amended complaint was filed.

The second amended complaint is the pleading at issue here. It pleads four causes of action: breach of fiduciary duty, constructive fraud, negligent misrepresentation, and a claim for declaratory relief. In support of those counts, Baral alleges as follows: Schnitt violated his fiduciary duties by usurping Baral's ownership and management interests so that Schnitt could benefit from the sale of IQ to LiveIt Investments, Ltd. (LiveIt). Schnitt sold a 72.6 percent interest in IQ based on his representation that he was its sole member and manager, and negotiated an employment position and ownership interest for himself without Baral's knowledge or consent. Schnitt also excluded Baral from the Moss Adams investigation in an effort to coerce his cooperation in the sale of the business.[4]

---

[4] The second amended complaint explained that the audit was occasioned by Schnitt's discovery that Baral's son, a bookkeeper for IQ, had misappropriated

*(footnote continued on next page)*

4

After the sale of IQ closed, Baral unsuccessfully renewed his efforts to provide information to the Moss Adams auditors. The second amended complaint sought an injunction to reopen the audit with Baral's participation, and to bar Schnitt from interfering with any corrections Moss Adams might make to its report.

Schnitt filed another anti-SLAPP motion, seeking to strike all references to the Moss Adams audit. The trial court denied the motion without deciding whether the second amended complaint contained allegations of protected activity. Instead, it ruled that the motion to strike applied only to entire causes of action as pleaded in the complaint, or to the complaint as a whole, not to isolated allegations within causes of action like the Moss Adams claims.

On Schnitt's appeal, the Court of Appeal affirmed. It held that the allegations concerning the Moss Adams audit arose from protected activity. Because Schnitt commissioned the audit with litigation in mind, he was acting "in furtherance of [his] right of petition." (§ 425.16(b)(1).) Even so, the court agreed with the trial judge that Schnitt's motion improperly sought to excise allegations from "mixed" causes of action. Schnitt conceded that Baral could make a prima facie case supporting his claims based on the sale of IQ to LiveIt, and that only the Moss Adams claims were vulnerable to the motion to strike. The court concluded that anti-SLAPP relief was not available because no cause of action enumerated in the second amended complaint would be eliminated if the allegations of protected activity were stricken.

---

*(footnote continued from previous page)*

funds. When informed of this, Baral guaranteed that he would indemnify IQ for any losses caused by his son. Ultimately, he did so.

5

The court recognized a split of authority in Court of Appeal cases dealing with mixed causes of action. It sided with those holding that section 425.16 applies to such causes of action in their entirety, and may not be used to strike particular allegations within them.

## II. DISCUSSION

The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity. Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712 (*Taus*).) If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. We have described this second step as a "summary-judgment-like procedure." (*Id.* at p. 714.)[5] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820 (*Oasis*).) "[C]laims with

---

[5] Anti-SLAPP motions differ from summary judgment motions in that they are brought at an early stage of the litigation, ordinarily within 60 days after the complaint is served. (§ 425.16, subd. (f).) Discovery is stayed, absent permission from the court. (§ 425.16, subd. (g).) Thus, the defendant may test the sufficiency of the plaintiff's claims before incurring the costs and disruptions of ordinary pretrial proceedings.

6

the requisite minimal merit may proceed." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 94 (*Navellier*).)

The question here arises at the second step of the analysis: What showing is required of a plaintiff with respect to a pleaded cause of action that includes allegations of both protected and unprotected activity?

A. *The Court of Appeal Cases*

The question was first squarely addressed in *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90 (*Mann*). The complaint in *Mann* included causes of action for defamation and trade libel. Some of the factual allegations supporting those counts involved protected activity, and some did not. (*Id.* at p. 105.) The *Mann* court declared: "Where a cause of action refers to both protected and unprotected activity and a plaintiff can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless and will not be subject to the anti-SLAPP procedure. [¶] Stated differently, the anti-SLAPP procedure may not be used like a motion to strike under section 436, eliminating those parts of a cause of action that a plaintiff cannot substantiate. Rather, once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands. Thus, a court need not engage in the time-consuming task of determining whether the plaintiff can substantiate all theories presented within a single cause of action and need not parse the cause of action so as to leave only those portions it has determined have merit." (*Id.* at p. 106.)

It is clear the *Mann* court thought an anti-SLAPP motion must defeat an entire cause of action as it is pleaded in the complaint. It noted that a defendant has other options for challenging allegations within a count. "For example, a defendant can file a motion to strike a particular claim under section 436 concurrently with its anti-SLAPP motion, or it can move for summary

7

adjudication of any distinct claim within a cause of action." (*Mann*, *supra*, 120 Cal.App.4th at p. 106.) The court concluded that the defamation count before it survived the special motion to strike because, the plaintiff showed a probability of prevailing based solely on its allegations of unprotected activity. (*Id*. at p. 107.) Thus, the "*Mann* rule" encompasses the propositions that an anti-SLAPP motion may not be used to attack particular claims within a cause of action as framed by the plaintiff, and that the plaintiff can defeat the motion by showing a probability of prevailing on any part of the count, including allegations of activity that is not protected by section 425.16. The rule has received a mixed reception in the Courts of Appeal, reflecting the complex analytical challenges posed by the *Mann* court's doctrinal innovation.

A series of early opinions referred to the *Mann* rule with approbation but did not fully apply it, because the courts did not reach the second anti-SLAPP step and thus did not assess the plaintiffs' probability of success. (*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1124–1125; *Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 786; *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539 (*Haight Ashbury*).) In *Haight Ashbury*, however, one justice wrote separately, taking strong exception to the *Mann* rule. (*Haight Ashbury*, at pp. 1556-1557 (conc. & dis. opn. of Needham, J.).)

Subsequently, the author of the separate opinion in *Haight Ashbury* gained a majority and criticized *Mann* at length, in *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1196-1212 (*Wallace*). The *Wallace* majority made clear its view that a plaintiff responding to an anti-SLAPP motion "must show the probability of prevailing on alleged claims of protected activity, and only those claims." (*Id*. at p. 1203.) However, it ultimately followed the *Mann* rule, after reviewing two decisions from this court: *Taus*, *supra*, 40 Cal.4th 683, and *Oasis*,

8

*supra*, 51 Cal.4th 811. It is important to note that neither *Taus* nor *Oasis* involved a mixed cause of action. However, both include discussions bearing tangentially on whether an anti-SLAPP motion may challenge particular allegations within causes of action as framed in the complaint.

The *Wallace* majority found *Mann* inconsistent with *Taus*, *supra*, 40 Cal.4th 683. There, we held that meritless assertions of liability should be stricken "even though they comprised a *part* of what the plaintiff had called a 'cause of action.' " (*Wallace*, *supra*, 196 Cal.App.4th at p. 1210; see *Taus*, at p. 742.) However, the majority reluctantly concluded that we had subsequently approved *Mann* in *Oasis*, *supra*, 51 Cal.4th 811. *Oasis* quoted the passages in *Mann* stating that if "a plaintiff can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless," and that "once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands." (*Mann*, *supra*, 120 Cal.App.4th at p. 106; see *Oasis*, at p. 820; *Wallace*, at p. 1212.) The concurring justice in *Wallace* declined to join the majority's criticism of the *Mann* rule, considering it "settled law." (*Wallace*, at p. 1216 (conc. opn. of Jones, P. J.).) In the concurrence's view, a mixed cause of action having *any* merit should not be stricken under the anti-SLAPP statute. (*Id*. at pp. 1217-1218.)

There was another split of opinion in *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751 (*Colton*). The majority relied on *Taus* and *Wallace* to hold that allegations of protected activity may be stricken from a mixed cause of action without affecting the allegations of unprotected activity. (*Colton*, at pp. 772-774.) The dissenting justice argued that section 425.16 only authorizes courts to strike an entire "cause of action," not particular supporting allegations. (*Colton*, at p. 792 (conc. & dis. opn. of Richli, Acting P. J.).) The dissent did not find *Taus* on

9

point. In any event, it noted, *Wallace* concluded that *Taus* had been implicitly overruled by *Oasis*. (*Colton*, at pp. 793-794.)

In *M.F. Farming Co. v. Couch Distributing Co., Inc.* (2012) 207 Cal.App.4th 180, 198, the court referred to the *Oasis* quotation of the *Mann* rule. It held that the plaintiff had established a probability of succeeding on a mixed cause of action for injunctive relief, evidently basing its conclusion on the allegations as a whole. (*M.F. Farming*, at pp. 197, 201-202.) In *Burrill v. Nair* (2013) 217 Cal.App.4th 357, 379, the court also relied on the passage in *Oasis* restating the *Mann* rule.[6]

In *Cho v. Chang* (2013) 219 Cal.App.4th 521 (*Cho*), the court observed that "[a]ppellate courts have wrestled with the application of the anti-SLAPP law" when allegations of protected and unprotected activity are combined. (*Id.* at p. 526.) After surveying the divergent case law, the court pointed out that neither *Taus* nor *Oasis* involved a mixed cause of action. It declined to read *Oasis* as broadly endorsing the *Mann* rule. "Instead, the guiding principle in applying the anti-SLAPP statute to a mixed cause of action case is that 'a plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one "cause of action." ' (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308." (*Cho*, at p. 527.)[7]

---

[6] No allegations of unprotected activity were involved in *Burrill*, but the defendant cited *Wallace* and *Taus* in arguing that the court could strike meritless portions of a defamation claim even if the plaintiff established a probability of prevailing on other portions. (*Burrill v. Nair*, *supra*, 217 Cal.App.4th at p. 379.) The *Burrill* court disagreed, noting that *Wallace* itself had followed the *Mann* rule. (*Burrill*, at p. 380.)

[7] In *Fox Searchlight Pictures, Inc. v. Paladino*, *supra*, 89 Cal.App.4th 294, the court touched only briefly on the topic of mixed causes of action, rejecting the

*(footnote continued on next page)*

*Cho* concluded: "It would make little sense if the anti-SLAPP law could be defeated by a pleading, such as the one in this case, in which several claims are combined into a single cause of action, [with some claims] alleging protected activity and some not. Striking the entire cause of action would plainly be inconsistent with the purposes of the statute. Striking the claims that invoke protected activity but allowing those alleging nonprotected activity to remain would defeat none of them. Doing so also is consonant with the historic effect of a motion to strike: 'to reach certain kinds of defects in a pleading that are not subject to demurrer.' (See 5 Witkin, Cal. Procedure, [*supra*,] Pleading, § 1008, p. 420.) [¶] That is what the trial court did in this case. Its ruling makes sense, and renders justice to both sides." (*Cho*, *supra*, 219 Cal.App.4th at p. 527.)

In the case now before us, the Court of Appeal acknowledged *Cho* but "[came] out on the side of those cases holding that, if the nonmoving party demonstrates a prima facie case of prevailing on *any* part of a mixed cause of action, the anti-SLAPP motion fails." The court reasoned that (1) section 425.16(b)(1) expressly refers to a "cause of action," and the Legislature has not altered that terminology; (2) the core purpose of the anti-SLAPP statute is to dispose of meritless litigation, not to strike particular allegations, however small a part of the case they may be; and (3) the benefits of striking mere allegations do not justify the significant effects of an anti-SLAPP motion, which include a stay of discovery, a bar against amendment of the complaint, an early test of the

_____

*(footnote continued from previous page)*

plaintiff's first-step argument that section 425.16 did not apply because each of its causes of action included an allegation of unprotected activity. (*Fox Searchlight*, at p. 308.) In its second-step analysis, the court focused on the allegations of protected activity. (*Id*. at pp. 308-317.)

11

plaintiff's proof without the ordinary benefits of discovery, an award of attorney fees if the moving party prevails, and an appeal if the motion is denied.

The court concluded: "For a defendant to get the benefit of these extraordinary consequences merely by filing a motion aimed at some allegations would encourage . . . an anti-SLAPP motion to excise allegations — no matter how minimal in relation to the remainder of the cause of action — merely to stop discovery and force plaintiff to show plaintiff's evidentiary hand early on, with further delay if the motion is denied and there is an appeal. Trial courts, moreover, would be burdened with more prolix motions with little commensurate savings in trial time."

B. Taus *and* Oasis

Clearly, our decisions in *Taus* and *Oasis* have occasioned some confusion in the Courts of Appeal. We briefly review and clarify those opinions before turning to the merits here. The plaintiff in *Taus* was the subject of a scholarly article on repressed memories of child abuse. She sued the authors and publishers of subsequent articles that questioned the premise of the original case study. (*Taus*, *supra*, 40 Cal.4th at p. 689.) The complaint pleaded four causes of action: negligent infliction of emotional distress, invasion of privacy, fraud, and defamation. (*Id*. at pp. 701-702.) The defendants filed an anti-SLAPP motion. The trial court struck the fraud claim against one defendant but not another, struck the defamation claim against one defendant but not another, and otherwise denied the motion. Only the defendants appealed. (*Id*. at pp. 702-703.)

The *Taus* Court of Appeal held that all the claims arose from protected acts in furtherance of the defendants' right of free speech. (*Taus*, *supra*, 40 Cal.4th at p. 704.) Regarding the plaintiff's probability of success, the court analyzed the invasion of privacy claim in terms of two distinct potential torts: improper disclosure of private facts and improper intrusion into private matters, each of

12

which was supported by allegations detailing three different incidents. (*Id.* at pp. 705-706.) With respect to the defamation cause of action, the court examined five alleged statements by defendants. (*Id*. at p. 708.) It concluded that the action could go forward on two claims for improper disclosure of private facts, two for improper intrusion into private matters, and one for defamation. (*Id*. at p. 711.)

Again, only the defendants sought review. We noted, "the only issues before us are whether the Court of Appeal properly concluded that dismissal under the anti-SLAPP statute was improper" with regard to the surviving claims. (*Taus*, *supra*, 40 Cal.4th at p. 711.) The alleged conduct underlying these claims "plainly fell within the scope of the anti-SLAPP statute." (*Id*. at p. 713.) We stated that "in order to avoid dismissal of each claim under section 425.16, plaintiff bore the burden of demonstrating a probability that she would prevail on the particular claim." (*Ibid*.) We closely examined the allegations, evidence, and controlling law as to each claim. (*Id*. at pp. 717-741.)

*Taus* held that the Court of Appeal erred by finding the plaintiff's showing sufficient as to three alleged incidents, but that one claim of improper intrusion into private matters could properly proceed based on another alleged incident. (*Taus*, *supra*, 40 Cal.4th at p. 742.) We concluded, "defendants' motion to strike the complaint pursuant to the anti-SLAPP statute properly was denied as to one facet of one of the numerous causes of action alleged in the complaint." (*Ibid*.) However, "the overwhelming majority of plaintiff's claims properly should have been struck in the trial court." (*Ibid*.)

The approach we took in *Taus* does not conform with the *Mann* rule. (See *Wallace*, *supra*, 196 Cal.App.4th at p. 1210; *Colton*, *supra*, 206 Cal.App.4th at p. 774.) Far from searching for "a probability of prevailing on *any part*" of the various claims before us, our review accomplished what the *Mann* court said the anti-SLAPP procedure may not be used for: "eliminating those parts of a cause of

13

action that a plaintiff cannot substantiate." (*Mann*, *supra*, 120 Cal.App.4th at p. 106.) Under the *Mann* rule, if Taus could have made the requisite showing of likely success on any part of her invasion of privacy cause of action, the entire claim would have survived. But we accepted the Court of Appeal's division of the claim into two separate theories of recovery, examined whether particular alleged actions would support liability under either of those theories, and concluded that only "one facet" of the invasion of privacy cause of action was viable. (*Taus*, *supra*, 40 Cal.4th at p. 742.)

It is true, as the dissenting justice in *Colton* observed, that we were not asked in *Taus* to consider the propriety of striking particular allegations within the various causes of action pleaded in the complaint. (*Colton*, *supra*, 206 Cal.App.4th at p. 793 (conc. & dis. opn.).) However, we would not have undertaken such an exhaustive analysis of alternate theories of liability, and their application to particular instances of alleged tortious behavior, if we thought the anti-SLAPP statute operates as described in *Mann*.

Nevertheless, we quoted from *Mann* in *Oasis*. There, a real estate development company sued its former attorney and his firm. After his representation of the plaintiff ended, the attorney campaigned to stop the same development project he had been retained to promote. He joined a citizens' group opposing it and solicited signatures for a petition to abrogate its approval. The complaint stated causes of action for breach of fiduciary duty, professional negligence, and breach of contract. (*Oasis*, *supra*, 51 Cal.4th at pp. 816-818.) The Court of Appeal reversed the denial of the defendants' anti-SLAPP motion. (*Id*. at p. 819.)

This court noted that at the second step of the anti-SLAPP analysis, the plaintiff's burden is to state and substantiate a legally sufficient claim. (*Oasis*, *supra*, 51 Cal.4th at p. 820.) We then quoted from *Mann*, but significantly omitted

14

its reference to a mixed cause of action: "If the plaintiff 'can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless' and will not be stricken; 'once a plaintiff shows a probability of prevailing on *any part of its claim*, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands.' " (*Ibid*., quoting *Mann*, *supra*, 120 Cal.App.4th at p. 106, with *Mann*'s italics.)

We considered "the causes of action for breach of fiduciary duty, professional negligence, and breach of contract together, [because] all three claims are based on [the attorney's] alleged breach of his duties as former counsel." (*Oasis*, *supra*, 51 Cal.4th at p. 820.) We reasoned that "[t]he complaint identifies a number of acts of alleged misconduct and theories of recovery, but for purposes of reviewing the ruling on an anti-SLAPP motion, it is sufficient to focus on just one." (*Id*. at p. 821.) Our focus was on the claim that the attorney had acquired confidential information about the plaintiff's project while acting as its counsel, and subsequently used that information to oppose the project as a private citizen. (*Id*. at pp. 821-822.) Based on the undisputed facts and reasonable inferences related to that ground for recovery, we concluded the plaintiff had "demonstrated a likelihood of prevailing on each of its three causes of action." (*Id*. at p. 822.)

Responding to the defendants' assertion that a categorical bar on attorney speech would have dire consequences, we explained: "we are not announcing a broad categorical bar here . . . . Our task is solely to determine whether any portion of [the plaintiff's] causes of action has even minimal merit within the meaning of the anti-SLAPP statute. A claim that [the attorney] used confidential information acquired during his representation of [the plaintiff] in active and overt support of a referendum to overturn the city council's approval of the . . . project, where the council's approval of the project was the explicit objective of the prior representation, meets that low standard." (*Oasis*, *supra*, 51 Cal.4th at p. 825.)

15

It is wrong to suggest, as have some Courts of Appeal, that *Oasis* amounts to an implicit disapproval of *Taus*. (See *Colton*, *supra*, 206 Cal.App.4th at p. 794 (conc. & dis. opn.); *Burrill v. Nair*, *supra*, 217 Cal.App.4th at p. 380; *Wallace*, *supra*, 196 Cal.App.4th at p. 1212.) *Oasis* did not mention *Taus*, and no holding in *Taus* is affected by anything we said in *Oasis*. The second-step analyses in the two opinions are certainly quite different. However, the differences flow from the way the parties framed the issues. In *Taus*, the defendants disputed the Court of Appeal's rulings on the viability of claims arising from discrete allegations of wrongdoing. In *Oasis*, the defendants made no such particular arguments. In the trial court, they sought to strike the *entire complaint* based on the assertion that the attorney defendant had breached no duty owed to his former client. In this court, they sought to preserve their victory in the Court of Appeal on the same broad theory, arguing that the plaintiff had failed to show any breach. In that context, it was sufficient to determine whether any of the attorney's alleged acts could be said to violate his fiduciary obligations.

As the *Cho* court noted, neither *Taus* nor *Oasis* involved a mixed cause of action. (*Cho*, *supra*, 219 Cal.App.4th at p. 527.) Thus, we had no occasion to consider the *Mann* rule and its implications. Nevertheless, the approach taken in *Taus* is consistent with the terms and purposes of the anti-SLAPP statute, and the *Mann* rule is not. Our quotation from *Mann* in *Oasis* must be understood as limited to the circumstances there presented. As discussed next, it is not the general rule that a plaintiff may defeat an anti-SLAPP motion by establishing a probability of prevailing on *any part* of a pleaded cause of action. Rather, the plaintiff must make the requisite showing as to each challenged claim that is based on allegations of protected activity. How the plaintiff does that will vary from case to case, depending on the nature of the complaint and the thrust of the motion. But when the defendant seeks to strike particular claims supported by

16

allegations of protected activity that appear alongside other claims within a single cause of action, the motion cannot be defeated by showing a likelihood of success on the claims arising from unprotected activity.

C. *Analysis*

The *Mann* court's reading of section 425.16(b) does not withstand scrutiny. Its refusal to permit anti-SLAPP motions to reach distinct claims within pleaded counts undermines the central purpose of the statute: screening out meritless claims that arise from protected activity, before the defendant is required to undergo the expense and intrusion of discovery. *Mann* suggested that summary adjudication and conventional motions to strike offer alternative means "to eliminate theories within a cause of action." (*Mann*, *supra*, 120 Cal.App.4th at p. 106.) However, neither of those procedures allows a defendant, at the early stage contemplated by section 425.16, to test the evidentiary sufficiency of claims arising from the kinds of activity given special protection by the anti-SLAPP statute.

Several Courts of Appeal have pointed out that the *Mann* rule permits artful pleading to evade the reach of the anti-SLAPP statute. By mixing allegations of protected and unprotected activity, the pleader may avoid scrutiny of the claims involving protected activity, as happened in *Mann*. (*Mann*, *supra*, 120 Cal.App.4th at p. 107; see *Cho*, *supra*, 219 Cal.App.4th at p. 527; *Colton*, *supra*, 206 Cal.App.4th at p. 774; *Wallace*, *supra*, 196 Cal.App.4th at p. 1202.) We agree that the application of section 425.16 cannot reasonably turn on how the challenged pleading is organized. Had the *Mann* complaint stated its defamation claim in two counts, one based on the protected statements and another on the unprotected statements, the plaintiff would have been required to establish a probability of prevailing on the claim arising from the protected speech. (See *Mann*, at p. 105; *Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1242 [each separate

17

defamatory statement gives rise to a new cause of action].) It is arbitrary to hold that the same claim, supported by allegations of protected and unprotected activity in a single cause of action, escapes review if the plaintiff shows a probability of prevailing on the allegations that are *not* covered by the anti-SLAPP statute.

The result in *Mann* cannot be squared with the language or the intent of section 425.16(b)(1). The statute provides: "A cause of action against a person *arising from any act of that person in furtherance of the person's right of petition or free speech* . . . shall be subject to a special motion to strike, unless the court determines . . . there is a probability that the plaintiff will prevail *on the claim*." (*Ibid.*, italics added.) These terms express the Legislature's desire to require plaintiffs to show a probability of prevailing on "the claim" arising from protected activity, not another claim that is based on activity that is beyond the scope of the anti-SLAPP statute but that happens to be included in the same count. (See *Wallace*, *supra*, 196 Cal.App.4th at pp. 1199-1200.) [8] As we noted in *Navellier*, "[t]he anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability — and whether that activity constitutes protected speech or petitioning." (*Navellier*, *supra*, 29 Cal.4th at p. 92.) And in *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78, we observed that "the statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech."

---

[8] The *Wallace* court noted that the legislative history of section 425.16 is silent with regard to mixed causes of action, but provides no indication that anti-SLAPP motions were meant to apply to claims that do not arise from speech or petitioning activity. (*Wallace*, *supra*, 196 Cal.App.4th at pp. 1200-1202.)

18

The anti-SLAPP procedures are designed to shield a defendant's constitutionally protected *conduct* from the undue burden of frivolous litigation. It follows, then, that courts may rule on plaintiffs' specific claims of protected activity, rather than reward artful pleading by ignoring such claims if they are mixed with assertions of unprotected activity.

We agree with the *Cho* and *Wallace* courts that the Legislature's choice of the term "motion to strike" reflects the understanding that an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded. (§ 425.16(b)(1); *Cho*, *supra*, 219 Cal.App.4th at p. 527; *Wallace*, *supra*, 196 Cal.App.4th at p. 1205, fn. 19; see § 435, subd. (b)(1) [motion to strike applies to "the whole or any part" of a pleading]; § 436, subd. (a) [court may "[s]trike out any irrelevant, false, or improper matter"]; *PH II, Inc. v. Superior Court* (1995) 33 Cal.App.4th 1680, 1682 [defective portion of a cause of action is subject to a conventional motion to strike].) The bench and bar are used to thinking of motions to strike as a way of challenging particular allegations within a pleading. (See 5 Witkin, Cal. Procedure, *supra*, Pleading, §§ 1009, 1012, pp. 420-421, 423; Weil et al., Cal. Practice Guide, Civil Procedure Before Trial (The Rutter Group 2016) ¶ 7:156, p. 7(I)-70.) The drafters of the anti-SLAPP statute were surely familiar with this understanding.

The Court of Appeal below was concerned about allowing defendants to target fragmentary allegations, no matter how insignificant. The concern was misplaced. Assertions that are "merely incidental" or "collateral" are not subject to section 425.16. (*Wallace*, *supra*, 196 Cal.App.4th at p. 1187; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672-673; see *Episcopal Church Cases* (2009) 45 Cal.4th 467, 477–478.) Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute.

19

Schnitt, the appellant here, argues that a "cause of action" arising from protected activity should be defined in terms of the primary right theory. (§ 425.16(b)(1).) "The primary right theory . . . provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681.) Schnitt reasons that anti-SLAPP motions must be directed against causes of action in this theoretical sense, without regard to how the pleading in question is framed. We are not persuaded, for several reasons.

Restricting anti-SLAPP motions to indivisible "causes of action" as determined by primary right theory would be inconsistent with the Legislature's use of the term "special motion to strike." (§ 425.16(b)(1).) As noted, the conventional motion to strike, which long preceded the anti-SLAPP statute, is well understood as a way to challenge particular allegations. Schnitt's suggested approach would also distort the anti-SLAPP statute's focus on claims of protected speech or petitioning activity. A single cause of action defined in terms of the plaintiff's primary right may include more than one instance of alleged wrongdoing. (See, e.g., *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 860-861.) Thus, the "mixed cause of action" problem would remain, because the same primary right may be violated by both protected and unprotected activity.

Further, the primary right theory is notoriously uncertain in application. "Despite the flat acceptance of the . . . theory . . . by California decisions, the meaning of 'cause of action' remains elusive and subject to frequent dispute and misconception." (4 Witkin, Cal. Procedure, *supra*, Pleading, § 35, p. 100.)

Dispute and misconception over the scope of the anti-SLAPP statute are to be avoided. We have observed that the "primary right theory has a fairly narrow field of application. It is invoked most often when a plaintiff attempts to divide a primary right and enforce it in two suits." (*Crowley v. Katleman*, *supra*, 8 Cal.4th at p. 682.) The theory is ill-suited to the anti-SLAPP context, where the Legislature authorized a special motion to strike only claims that arise from protected speech or petitioning activity.

The scope of the term "cause of action" in section 425.16(b)(1) is evident from its statutory context. When the Legislature declared that a "cause of action" arising from activity furthering the rights of petition or free speech may be stricken unless the plaintiff establishes a probability of prevailing, it had in mind *allegations of protected activity that are asserted as grounds for relief*. The targeted claim must amount to a "cause of action" in the sense that it is alleged to justify a remedy. By referring to a "cause of action against a person arising from *any act* of that person in furtherance of" the protected rights of petition and speech, the Legislature indicated that *particular* alleged acts giving rise to a claim for relief may be the object of an anti-SLAPP motion. (§ 425.16(b)(1), italics added.) Thus, in cases involving allegations of both protected and unprotected activity, the plaintiff is required to establish a probability of prevailing on any claim for relief based on allegations of protected activity. Unless the plaintiff can do so, the claim and its corresponding allegations must be stricken. Neither the form of the complaint nor the primary right at stake is determinative.

Respondent Baral offers little in the way of support for the *Mann* rule. He relies on *Oasis*, *supra*, 51 Cal.4th 811, and the Court of Appeal opinions that have found in it an endorsement of *Mann*. (See pt. II.A., *ante*.) We have explained that this interpretation reads too much into *Oasis*. (Pt. II.B., *ante*.) Baral also notes that section 425.16 has been amended six times, yet the Legislature has not seen fit

21

to provide that the statute applies to anything less than a "cause of action."[9]  He contends the Legislature intended to restrict the scope of the statute to causes of action that are *completely* meritless, and argues that it is inconsistent with that intent to permit a motion to strike specific allegations from otherwise meritorious claims.  Our reading of the term "cause of action" in the anti-SLAPP statute is fully consistent with the legislative intent discerned by Baral.  The term refers to claims for relief that are based on allegations of protected activity.  Such claims may be stricken only if they lack any merit.[10]

For all the reasons stated above, we disapprove the *Mann* rule.[11]

Although the issue arose here at the second step of the anti-SLAPP procedure, identification of causes of action arising from protected activity ordinarily occurs at the first step.  For the benefit of litigants and courts involved

---

[9]	Three of the amendments came after the decision in *Mann*, *supra*, 120 Cal.App.4th 90.  (Stats. 2005, ch. 535, § 1, p. 4120; Stats. 2010, ch. 328, § 34; Stats. 2014, ch. 71, § 17.)  Baral does not make a legislative acquiescence argument, as did the concurring and dissenting opinion in *Wallace*, *supra*, 196 Cal.App.4th at pages 1219-1220.  In any event, the weak reed of legislative inaction provides little support for the *Mann* rule.  (See *Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1108.)  The rule has not been widely accepted, and in such a circumstance the Legislature is apt to trust the courts to correct their own errors. (See *People v. Whitmer* (2014) 59 Cal.4th 733, 741.)

[10]	Baral raises a number of arguments with respect to the first-stage analysis of his claims.  The Court of Appeal did not reach all the first-stage issues before it because it ruled that Schnitt's motion improperly targeted particular allegations within mixed causes of action.  It is appropriate for the court to consider the matter anew upon remand, in light of our contrary holding.

[11]	*Mann v. Quality Old Time Service, Inc.*, *supra*, 120 Cal.App.4th 90, is overruled to the extent it is inconsistent with this opinion.  *Burrill v. Nair*, *supra*, 217 Cal.App.4th 357, *M.F. Farming Co. v. Couch Distributing Co., Inc.*, *supra*, 207 Cal.App.4th 180, and *Wallace v. McCubbin*, *supra*, 196 Cal.App.4th 1169, are disapproved insofar as they read *Oasis*, *supra*, 51 Cal.4th 811, as an endorsement of the *Mann* rule.

22

in this sometimes difficult area of pretrial procedure, we provide a brief summary of the showings and findings required by section 425.16(b). At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing.

## III. DISPOSITION

We reverse the Court of Appeal's judgment and remand for further proceedings consistent with this opinion.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

23

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Baral v. Schnitt

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 233 Cal.App.4th 1423
**Rehearing Granted**

_____

**Opinion No.** S225090
**Date Filed:** August 1, 2016

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Maureen Duffy-Lewis

_____

**Counsel:**

Kerr & Wagstaffe, James M. Wagstafffe, Kevin B. Clune; Ervin Cohen & Jessup, Michael C. Lieb and Leemore L. Kushner for Defendant and Appellant.

Davis Wright Tremaine, Thomas R. Burke, Rochelle L. Wilcox and John D. Freed for Los Angeles Times Communications LLC, Reporters Committee for Freedom of the Press, California Newspaper Publishers Association, Californians Aware, The First Amendment Coalition, The McClatchy Company, First Look Media, Inc., The Associated Press, News Corporation, Dow Jones & Co., Inc., The New York Times Company, Cable News Network, Inc., ABC, Inc., The Hearst Corporation, Bloomberg, L.P. and CBS Broadcasting, Inc., as Amici Curiae on behalf of Defendant and Appellant,

Sauer & Wagner, Gerald L. Sauer and Amir A. Torkamani for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

James M. Wagstafffe
Kerr & Wagstaffe
101 Mission Street, 18th Floor
San Francisco, CA  94105
(415) 371-8500

Gerald L. Sauer
Sauer & Wagner
1801 Century Park East, Suite 1150
Los Angeles, CA  90067
(310) 712-8100