Filed 11/16/21  Seo v. Park CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

YOUNGJIN SEO,

    Plaintiff and Respondent,

      v.

YUNG KI PARK et al.,

    Defendants and Appellants.

G059444

(Super. Ct. No. 30-2019-01050002)

O P I N I O N

        Appeal from an order of the Superior Court of Orange County, Layne H. Melzer, Judge.  Affirmed.

        Lee Anav Chung White Kim Ruger & Richter, Bub-Joo S. Lee and Omar Khan for Defendant and Appellant Yung Ki Park.

        Parker Mills, David B. Parker and Steven S. Wang for Defendant and Appellant SC&P Resources, Inc.

        Daniel E. Park, Anna-Sophie Tirre and Rupal Agrawal for Plaintiff and Respondent.

## INTRODUCTION

Yung Ki Park and SC&P Resources, Inc., appeal from an order denying their motions to strike under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1]  Respondent Youngjin Seo sued Park individually and derivatively on behalf of SC&P, alleging that Park had defrauded Seo in recommending self-serving investments and, eventually, in taking over SC&P, which Seo had founded.

Park and SC&P moved to strike certain new allegations of Seo's third amended complaint, asserting that the newly added portions alleged protected activity as defined by the anti-SLAPP statute and Seo had no probability of prevailing because of the privilege afforded by Civil Code section 47.  The trial court denied both motions, ruling that the new allegations did not involve protected activity.

We affirm the order.  The new allegations of the third amended complaint do not involve protected activity.  They merely provide evidence to support Seo's claim he was being wrongfully pushed out of his place in SC&P.

## FACTS

Seo sued Park in February 2019 for taking over SC&P (which Seo incorporated in 2013) while defrauding him of millions of dollars through self-interested investment recommendations.  Seo also sued derivatively on SC&P's behalf.

Seo filed a second amended complaint in September 2019.  The complaint included individual causes of action for conversion, breach of contract, fraud, and negligence, as well as derivative causes of action for breach of fiduciary duty and conversion.  Both Park and SC&P demurred.

The court sustained SC&P's demurrer to the second amended complaint in its entirety.  The court ruled that Seo had not adequately alleged demand futility, as required under the Corporations Code and sustained demurrers to Seo's individual causes

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

of action for breach of contract and negligence without leave to amend. The demurrers to the remaining causes of action were sustained *with* leave to amend.

Seo filed the third amended complaint on May 26, 2020. This complaint included new allegations regarding a secret shareholders' meeting in May 2018, during which 25 percent of Seo's stock was transferred to treasury stock and then canceled. It was alleged that after the secret shareholders' meeting, Park convened another shareholders' meeting in November 2019 to elect a new board of directors, of which meeting Seo had notice and which he attended with counsel.[2] By misrepresenting the number of shares owned by Seo and by himself, Park was able to elect the directors he favored, over Seo's objections. Seo then discovered that Park had filed a statement of information for SC&P with the Secretary of State in September 2019, before the shareholders' meeting, representing that the directors elected only in November were already on the board. He also alleged demand futility, alleging that the newly elected members of the board were put in place by Park and were in cahoots with him.

The third amended complaint included a new cause of action for fraud against Park individually and a cause of action for conspiracy. As relief, Seo sought access to the company's books and records, a declaration of his rights as a shareholder of SC&P, an accounting, damages in accordance with the accounting, disgorgement of profits, a constructive trust of his property, punitive damages, interest, and attorney fees.

Both Park and SC&P made motions to strike under section 425.16. Both defendants based their motions on the portion of subdivision (e) that defines an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue'" to include "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by

---

[2]    Both parties had counsel at this meeting.

3

law[.]"  They contended that the allegations regarding the secret shareholders' meeting and the November 2019 vote for the new board of directors were part and parcel of Seo's mismanagement claims, which were already under judicial review in the present lawsuit. In addition, filing the statement of information with the Secretary of State was an official proceeding authorized by law.

The trial court denied both motions, holding that the new allegations did not form the basis of Seo's claims but were only "'incidental'" or "'collateral'" to the already existing "'gravamen'" of the complaint, which was Park's takeover of SC&P and his fraudulent investment advice.  The court noted that the new cause of action for fraud explicitly referred to the secret shareholder meeting only in passing, among other allegations of wrongdoing, and the conspiracy cause of action did not mention shareholder meetings or the November 2019 election of the board at all.  Because Park and SC&P had failed to carry their burden to establish protected activity, the court did not reach Seo's probability of prevailing.

## DISCUSSION

Section 425.16 was enacted to counteract "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  (§ 425.16, subd. (a).) The statute protects defendants from meritless suits that include "(1) [a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution[.]"  (*Id*., subd. (b).)  "The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech.  It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)

We review orders granting or denying anti-SLAPP motions de novo. (*Nagel v. Twin Laboratories, Inc*. (2003) 109 Cal.App.4th 39, 44.)  We employ the same

4

analytic process in our review as the one used by the trial court. (See *Moss Bros. Toy, Inc. v. Ruiz* (2018) 27 Cal.App.5th 424, 433.)

The two-step analysis of anti-SLAPP motions examines, first, whether the defendant has carried the burden of showing the cause of action arises from protected activity as the statute defines it. If the defendant makes this showing, the burden shifts to the plaintiff "to demonstrate the merit of the claim by establishing a probability of success." (*Baral, supra*, 1 Cal.5th at p. 384.)

"[T]he mere fact an action was filed after protected activity took place does not mean it arose from that activity. The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based* on conduct in exercise of those rights.' [Citations.] [¶] . . . California courts rightly have rejected the notion 'that a lawsuit is adequately shown to be one "arising from" an act in furtherance of the rights of petition or free speech as long as suit was brought after the defendant engaged in such an act, whether or not the purported basis for the suit is that act itself.' [Citation.]" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76-77; see *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 ["arising from" means cause of action itself based on protected activity].)

"[A] claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity, or when protected activity merely provides evidentiary support or context for the claim. [Citation.] Rather, the protected activity must 'supply elements of the challenged claim.' [Citation.]" (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621.)

Appellants make three arguments to support their claim the trial court should have granted their anti-SLAPP motions. First, the November 2019 shareholders meeting and the events leading up to it (including the secret shareholder meeting) were protected activity because they dealt with Park's management of SC&P and Seo's

5

ownership interest in the company, which were under judicial review because of the ongoing lawsuit. The statements made at the November meeting, including those relating to providing corporate documents, dealt with allegations of the complaint and were made by counsel to counsel. Next, the board of directors election at the November 2019 meeting related to Seo's allegations of demand futility, which affected his ability to bring a derivative action on SC&P's behalf. Seo alleged that because the improperly elected board was composed of Park's cronies, demand on the board to sue Park was futile. Seo therefore had standing to bring a derivative action against Park on behalf of the company. The standing issue was also under judicial review at that point. Finally, filing the allegedly improper statement of information with the Secretary of State was an official act and therefore protected activity.

Appellants have confused protected activity with statements *about* or *made during* protected activity. This is "the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1064 (*Park*).) The Supreme Court articulated this distinction in *Park*. In that case, an assistant professor at Cal State Los Angeles claimed he had been denied tenure because of his national origin. The university made an anti-SLAPP motion, asserting that the lawsuit arose from the decision to deny him tenure and the communications leading up to and following the decision, which were protected activities. (*Id.* at p. 1061.) The trial court denied the motion, but the Court of Appeal reversed. (*Id.* at pp. 1061-1062.)

The Supreme Court agreed with the trial court. As the court stated, "The elements of Park's claim . . . depend not on the grievance proceeding, any statements, or any specific evaluations of him in the tenure process, but only on the denial of tenure itself and whether the motive for that action was impermissible. The tenure decision may have been communicated orally or in writing, but that communication does not convert

6

Park's suit to one arising from such speech. The dean's alleged comments may supply evidence of animus, but that does not convert the statements themselves into the basis for liability. As the trial court correctly observed, Park's complaint is 'based on the act of denying plaintiff tenure based on national origin. Plaintiff could have omitted allegations regarding communicative acts or filing a grievance and still state the same claims.' [Citation.]" (*Park, supra,* 2 Cal.5th at p. 1068; see also *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 354 [action taken after discussion and vote did not mean action *arose from* protected activity].)

The allegations appellants asked the trial court to strike in Seo's third amended complaint do not recite acts that qualify as protected activity under the anti-SLAPP statute. Holding a shareholders' meeting to elect a board of directors is not protected activity, regardless of whether the attendees had counsel with them and regardless of what was discussed. Omitting these allegations does not preclude Seo from pursuing a claim for fraud or for declaratory relief and an accounting.

In addition, an anti-SLAPP motion may not be deployed against allegations that merely supply evidentiary support for the underlying claim. (*Park, supra,* 2 Cal.5th at p. 1064.) In this case, one of the underlying claims is that Park deprived Seo of the control of SC&P through a series of stock manipulations and other corporate maneuvers. The November 2019 stockholders meeting is simply more evidence of this usurpation.

Appellants' argument implies that the anti-SLAPP statute casts a protective shield over *any* examples of bad conduct that took place after a lawsuit was filed. This is clearly wrong. Suppose that instead of alleging a meeting in November 2019, Seo had alleged that in November 2019, Park had transferred all the company's cash to an account in his name in the Cayman Islands and fled to Brazil. Would the anti-SLAPP statute prevent Seo from alleging these new facts as further evidence of Park's misdeeds as a

corporate director merely because other examples of his misdeeds were already alleged in the second amended complaint?

It would not. If the additional "bad conduct" consists of protected activity – for example, filing a cross-complaint – then section 425.15 could be deployed to strike those allegations. But not everything that happens after a lawsuit is filed is vulnerable to the anti-SLAPP statute, and Seo's allegations are unobjectionable under the statute.

Appellants also argue that Seo cannot base his demand futility allegations on the allegedly fraudulent board of directors election in November 2019 because the meeting was protected activity. Section 425.16, subdivision (b)(1), permits the court to strike a "cause of action" or, as the court explained in *Baral*, "allegations of protected activity that are asserted as grounds for relief" or a "claim" "that it is alleged to justify a remedy." (*Baral, supra,* 1 Cal.5th at p. 395, italics omitted.) Demand on the board is neither a claim alleged to justify a remedy nor an allegation asserted as grounds for relief. It is a pretrial procedural requirement imposed on derivative plaintiffs under Corporations Code section 800, subdivision (b)(2), to insure that the directors have had notice of the alleged corporate wrongdoing and the opportunity to have the corporation assert its own rights. (See *Bader v. Anderson* (2009) 179 Cal.App.4th 775, 789.) It does not come within the ambit of section 425.16 because it is not a ground for relief or remedy.

By the same token, the allegations regarding the filing of the statement of information further support Seo's underlying claim of a corporate takeover. They do not constitute a separate claim or cause of action. Seo does not ask for any relief based specifically on the filing of the statement of information. He does not, for example, ask the court to cancel the statement of information or to order another one filed in its place. This allegation and the allegations regarding the shareholders' meetings are proffered as additional instances of Park's larger plan to take over SC&P and exclude Seo. If they were eliminated from the complaint, nothing would change. Seo would still be able to ask for his accounting, his declaratory relief, his damages, and the rest of the relief that he

8

has sought from the beginning. These new allegations are not, in *Baral*'s words, "allegations of protected activity that are asserted as grounds for relief." (*Baral, supra,* 1 Cal.5th at p. 395, italics omitted.) The trial court was correct to reject the anti-SLAPP motion based on these and the other allegations discussed above.

## DISPOSITION

The order denying appellants' anti-SLAPP motion is affirmed. Respondent is to recover costs on appeal.



BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


MARKS, J.*


*Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.